1

2

3

4

5

6                            UNITED STATES DISTRICT COURT

7                                  DISTRICT OF NEVADA

8                                          * * *

9    ERMA TURNBULL,                        )
                                           )
10                 Plaintiff,              )              03:06-CV-00656-LRH-VPC
                                           )
11   v.                                    )
                                           )              ORDER
12   J. MICHAEL MEMEO, individually and in his )
     official capacity as Chief Administrator of the )
13   Fourth Judicial District Court of the State of )
     Nevada, in and for the County of Elko; )
14   JAMES WATSON, individually and in his )
     official capacity as a Chief Juvenile Probation )
15   Officer; the STATE OF NEVADA, ex. rel. the )
     FOURTH JUDICIAL DISTRICT COURT OF )
16   THE STATE OF NEVADA IN AND FOR )
     THE COUNTY OF ELKO, )
17                                         )
                   Defendants.             )
18   _____)

19          Before the court is Defendant J. Michael Memeo's ("Memeo") Motion for Summary

20   Judgment (#5[1]) and Defendant James Watson's ("Watson") Motion for Summary Judgment (#6).

21   Plaintiff Erma Turnbull ("Turnbull") has responded to each defendant's motion (#11 & 12), and

22   both defendants have replied (#13 & 17).

23   **I.     Facts**

24          Turnbull began working for the Elko County Probation Department as a detention officer in

25

26   _____
            [1]Refers to court's docket.

December of 1989.  (Turnbull Dep. (#5), Ex. A at 31:21-21:1.)  The Probation Department is under the authority of the Fourth Judicial District Court (*Id*. at 31: 21-23), whose Chief Administrator is the senior District Court Judge.  In September 1994, Turnbull signed a document intended to "clarify" her status as an at-will employee.  (*Id*. at 37:13-18.)

In 2002, Memeo, as senior District Court Judge, assumed control over administration of the Probation Department.  (*Id*. at 49:4.)  Following Memeo's assumption of control, Turnbull and other Probation Department employees heard rumors that Memeo had the intention of laying off the entire staff.  (*Id*. at 50:3.)  In July 2002, Memeo and Judge Puccinelli, another judge with the Fourth Judicial District Court, convened a meeting to rebut the rumors.  (*Id*. at 49:5-6.)  Pucinelli announced that "there is no intention of firing anybody," and Memeo added that "if one member of the team does not work, then the team doesn't work."  (*Id*. at 50:5-8.)  In January 2003, Watson, Chief Juvenile Probation Officer in the Probation Department, chaired a detention staff meeting, during which he stated that Memeo had given him the authority to fire employees for cause.  (*Id*. at 62:9-14.)

The following year, in April 2003, Turnbull reported that Watson used force against a juvenile.  (*Id*. at 93:1-6.)  Turnbull did not witness the incident, but her coworker told her Watson had punched the juvenile in the head.  (*Id*. at 90:10-19.)  Turnbull filed a report and was interviewed in the course of an investigation into the incident.  (*Id*. at 91:25.)  Following the investigation, Watson called Turnbull into his office and told Turnbull, "You cannot quit . . . you are too valuable an employee, you cannot quit."  (*Id*. at 93:17-23.)  However, Turnbull did not attempt to quit, and she "had no idea where that was coming from."  (*Id*.)

On June 12, 2003, Pat Plaster, the Juvenile Detention Director working directly beneath Watson, told Turnbull that she "had the choice of resigning or being terminated."  (*Id*. at 51:23-25.)  When Turnbull asked the reasons for her termination, Plaster responded that Turnbull's "job performance and supervisory skills had become less than adequate."  (*Id*. at 60:3-4.)

2

1  While Turnbull's job performance evaluation of June 4, 2003, rated her job performance as
2  "standard or above" (*id*. at 81:12), Plaster cited two incidents involving juveniles, the most recent
3  on May 15, 2003, (Letter of Pat Plaster (#6), Ex. B) that Turnbull could have "handled differently."
4  (Turnbull Dep. (#5), Ex. A at 71:1-2.)  Turnbull submitted her resignation on June 13, 2003,
5  effective July 2, 2003.  (*Id*. at 68:7-18.)

6  On June 30, 2003, two days before the effective date of resignation, Turnbull attempted to
7  withdraw her resignation "because it was given under a state of duress."  (*Id*. at 69:11-21.)
8  Although the record does not show what occurred upon this attempt, Turnbull was apparently
9  unsuccessful.

10  Following her termination, Turnbull was replaced by an older male.  (*Id*. at 82:14-23.)  In
11  addition, one of Turnbull's coworkers was also terminated and replaced by a male.  (*Id*. at 53-54.)
12  While no younger female employees had been hired in Turnbull's department (*id*. at 86:25-87:3) a
13  younger female employee did replace an older female employee in another department of the court
14  (*id*. at 57:8-9).

15  **II.    Legal Standard**

16  Summary judgment is appropriate only when "the pleadings, depositions, answers to
17  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
18  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of
19  law." Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence, together
20  with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable
21  to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
22  587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d
23  1148, 1154 (9th Cir. 2001).

24  The moving party bears the burden of informing the court of the basis for its motion, along
25  with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*,

26

477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  *See also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D.Cal. 2001).  For those issues where the moving party will not have the burden of proof at trial, the movant must point out to the court "that there is an absence of evidence to support the nonmoving party's case." *Catrett,* 477 U.S. at 325.

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505.   The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff.  *See id.* at 252, 106 S.Ct. 2505.

**III.    Discussion**

    **A. Procedural and Jurisdictional Matters**

        **1.    Defendants Reachable Under the ADEA**

In this court's September 20, 2005, order, the court dismissed the defendant Fourth Judicial District Court on Eleventh Amendment grounds.  The court relied upon *Jackson v. Hayakawa*, 682 F.2d 1344 (9th Cir. 1982) as the basis for this decision.  Upon reviewing this decision, the court finds that the basis for the dismissal, while harmless, was nonetheless error.

4

1    In enacting the ADEA, Congress made clear that it intended to subject states to liability for
2    age discrimination. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000). In some circumstances,
3    Congress's explicit intent to abrogate the states' Eleventh Amendment immunity is sufficient to
4    permit state liability for damages. *Id.* at 80. However, in *Kimel*, the Supreme Court held that the
5    ADEA is not a valid abrogation of the states' Eleventh Amendment immunity because it is not a
6    proper exercise of Congress's authority under § 5 of the Fourteenth Amendment. *Id.* at 82-83.
7    Therefore, while this court was correct in holding that the Fourth Judicial District Court is immune
8    from suit under the ADEA, this conclusion follows from *Kimel* rather than the Ninth Circuit's
9    decision in *Jackson v. Hayakawa*, which concerned a state's Eleventh Amendment Immunity under
10   42 U.S.C. § 1983.

11   This court's September 20, 2005, order also denied Defendants' motion to dismiss Memeo
12   and Watson in their official capacities. The court reasoned Defendants had not provided any
13   evidence that a judgment against Memeo and Watson in their official capacities would be paid by
14   Nevada, and therefore dismissal pursuant to the Eleventh Amendment was inappropriate at that
15   juncture. Upon reviewing the current motions for summary judgment, the court finds Memeo and
16   Watson have still failed to present any evidence that Nevada would pay any judgment against them
17   in their official capacities. As such, this court will continue to entertain Plaintiff's ADEA claim
18   against Memeo and Watson in their official capacities.

19   Finally, although the issue was not briefed by the parties, the court finds that Memeo and
20   Watson cannot be sued in their individual capacities because they are not "employers" within the
21   meaning of the ADEA. Individual defendants cannot be held liable for damages under the ADEA;
22   rather, only employers may be liable, though they are subject to respondeat superior liability for the
23   acts of their employees. *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993). In
24   this case, Plaintiff has sued Memeo and Watson in their individual capacities. Turnbull, however,
25   acknowledges that she was employed by the Fourth Judicial District Court's Juvenile Probation
26

1  Department.  (Turnbull Dep. (#5), Ex. A at 31-32.)  Therefore, Watson and Memeo in their

2  individual capacities are entitled to partial summary judgment on Turnbull's ADEA claims.

3  **2.      Defendants Reachable Under Title VII**

4  This court's September 20, 2005, order also dismissed Plaintiff's Title VII claims against

5  the Fourth Judicial District Court on grounds that the court was entitled to Eleventh Amendment

6  immunity.  This conclusion, however, was error.  A state may be liable for damages under Title VII

7  for sex discrimination, as Title VII is a valid exercise of Congress's authority under § 5 of the

8  Fourteenth Amendment.  *See Okruhlik v. Univ. of Ark.*, 255 F.3d 615, 627 (8th Cir. 2001).

9  Therefore, the Fourth Judicial District, as an arm of the state, and Memeo and Watson in their

10  official capacities are potentially subject to liability under Title VII.

11  Title VII, however, does not impose liability on supervisory employees in their individual

12  capacities.  *See Miller*, 991 F.2d at 587.  Therefore, Memeo and Watson in their individual

13  capacities are entitled to partial summary judgment on Plaintiff's Title VII claims.

14  **B.  Admissibility of September 1994 Letter**

15  Turnbull argues that the letter she signed in September 1994 is inadmissible for two

16  reasons: first, the letter references Nevada Revised Statutes Section 62.110, which was later

17  repealed; and second, the letter raises "possibilities of 'unfair prejudice, confusion of the issues, or

18  misleading the jury.'" (Opp'n to Memeo's Mot. for Summ. J. (#12) at 12.)  The court disagrees.

19  The letter is relevant to establishing the parties' understanding of Turnbull's at-will employment.

20  *See* Fed. R. Evid. 402. ("All relevant evidence is admissible.")  Even if reference to Nevada

21  Revised Statutes section 62.110 could affect the letter's admissibility, Turnbull's objection is

22  without merit.  Section 62.110 was repealed, but it was reenacted in relevant part as Nevada

23  Revised Statutes section 62G.060.  *See* Nev. Rev. Stat. § 62G.060 (2004) (reviser's notes).

24  In addition, the letter does not raise possibilities of unfair prejudice, confusion of the issues,

25  or misleading the jury.  In order to exclude the letter, the court must find that its probative value is

26  6

1   substantially outweighed by the danger of prejudice.  Fed. R. Evid. 403; *McEuin v. Crown*

2   *Equipment Corp.*, 328 F.3d 1028, 1035 (9th Cir. 2003).  Merely because evidence is harmful to the

3   plaintiff's case does not make the evidence prejudicial.  *See Plummer v. Western Intern. Hotels Co.,*

4   *Inc.*, 656 F.2d 502, 504 (9th Cir. 1981) (discussing an EEOC report harmful to a defendant).  The

5   September 1994 letter is admissible.

6       **C.  At-Will Employment**

7       Memeo and Watson argue that the evidence submitted in connection with the present

8   motions for summary judgment conclusively shows Turnbull's employment was at-will.  They

9   further argue that there is no evidence to suggest Turnbull's at-will employment status ever

10  changed.

11      Under Nevada law, employment contracts are presumably terminable at will.  *Yeager v.*

12  *Harrah's Club, Inc.*, 897 P.2d 1093, 1095 (Nev. 1995).  To overcome this presumption, an

13  employee must provide corroborating evidence when she is claiming her employer made oral

14  promises of long-term employment.  *Id.* at 1096.  With a few exceptions driven by public policy, an

15  at-will employee can be terminated without liability for any reason or no reason.  *Martin v. Sears,*

16  *Roebuck & Co.*, 899 P.2d 551, 553-54 (Nev. 1995).

17      In the present case, the evidence conclusively shows Turnbull was an at-will employee.

18  Turnbull signed a document in September 1994 acknowledging her at-will status.  (Turnbull Dep.

19  (#5), Ex. A at 37:13-18.)   Turnbull claims that two events effected a change in her employment

20  status.  First, during the July 2002 meeting, Judge Pucinelli announced that "there is no intention of

21  firing anybody," and Memeo added that "if one member of the team does not work, then the team

22  doesn't work." (*Id*. at 50:5-8.)  Assuming Pucinelli's statement is admissible, it does not modify

23  the terms of the employment agreement.  An indication of an employer's current intentions within

24  the context of rebutting rumors of mass termination is not a promise sufficient to modify an

25  employment contract.  Memeo's and Pucinelli's statements are aphoristic opinions or statements of

26

future events, and a "fundamental principle of contract formation is that a promise must be distinguished from a statement of opinion or a mere prediction of future events." *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 698 (9th Cir. 2004) (quoting Restatement (Second) of Contracts § 2 cmt. (f) (1981)).  Furthermore, Pucinelli's indication of his "intention" within a staff meeting does not demonstrate "that a contract was formed with [a] *specific* employee." *Yeager*, 897 P.2d at 1096 (emphasis added).

The second event Turnbull contends modified her employment status is the staff meeting of January 2003, during which Watson stated he had the authority to fire employees for cause. However, the inference from an ability to fire for cause to an inability to fire without cause is logically unsound.  Furthermore, while Turnbull argues that she believed these events meant the September 1994 letter was "basically was non-existent anymore" (Turnbull Dep. (#5), Ex. A at 50:7-11), Turnbull's subjective inference that neither Watson (nor anyone else) could fire her without cause is insufficient to overcome the presumption of at-will employment. *See Beales v. Hillhaven, Inc.*, 825 P.2d 212, 216 (Nev. 1992) (noting that the subjective expectation of long-term employment does not alter at-will status).

### 1.     Due Process Claim

Turnbull's due process claim alleges she was deprived of a "state-created property right and interest" without the required due process to which she was entitled.  However, as an at-will employee, Turnbull had no protected property interest in her continued employment. *See Bishop v. Wood*, 426 U.S. 341, 346-47 (1976).  Therefore, no due process claim may lie. *Id*.  Summary judgment on Plaintiff's due process claim is thus appropriate.

### 2.     Breach of Contract Claims

Turnbull's at-will status also impacts her claims for breach of contract and breach of the

implied covenant of good faith and fair dealing.[2]  Under Nevada law, "breach of contract and bad

faith discharge are not applicable to at-will employment."  *Martin*, 899 P.2d at 555.  Therefore,

summary judgment on Turnbull's sixth and seventh claims for relief is appropriate.

### 3.    Wrongful Termination

Turnbull claims wrongful termination through constructive discharge.  Under Nevada law,

an at-will employee may only bring a claim for wrongful termination if the termination violates

public policy.  *Canada v. Boyd Group, Inc.*, 809 F. Supp. 771, 781 (D. Nev. 1982).  Here, the

alleged violations of public policy include age and sex discrimination, what Turnbull calls

"dwindling-age-beauty discrimination."  (Opp'n to Memeo's Mot. for Summ. J. (#11) at 11.)

However, this district has found that a claim for wrongful termination does not lie where statutory

remedies exist, as in the case of age and sex discrimination.  *Canada*, 809 F. Supp. at 781-82.

Therefore, summary judgment on Turnbull's wrongful termination claim is appropriate, as it rests

on age and sex discrimination.

### D.  Federal Age and Sex Discrimination Claims

### 1.    Member of Personal Staff

Memeo argues that Turnbull is not an "employee" within the meaning of Title VII of the

Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA")

because she is a member of Memeo's personal staff.  Both the ADEA and Title VII exclude from

the definition of employee "any person elected to public office in any State . . . or any person

chosen by such officer to be on such officer's personal staff."  42 U.S.C. § 2000e(f); 29 U.S.C. §

630(f).  Since Memeo holds an elected office (Memeo Dep. (#5), Ex. B at ¶ 2) and is the chief

administrator of the Fourth Judicial District Court, within which lies the Juvenile Probation

Department (Turnbull Dep. (#5), Ex. A at 49:4), Turnbull works for Memeo.  Thus, Memeo argues,

---

[2]While Turnbull labels her seventh claim for relief as "breach of the implied covenant of good faith
an fair dealing," her reference to "tortious acts" in that claim makes clear that the claim is more accurately
described as one of tortious breach of contract.

Title VII and ADEA protections are not available to Turnbull because she is a member of Memeo's staff.

The following factors are relevant to whether an employee is a member of an elected official's "personal staff" for the purposes of Title VII and the ADEA:

> (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 158 (6th Cir. 2004). All but the first factor militate against considering Turnbull as part of Memeo's personal staff. While Memeo does have plenary hiring and firing power (*See* Memeo Dep. (#5), Ex. B at ¶ 3), Turnbull was accountable both to Watson and her immediate supervisor, Pat Plaster. Turnbull was not required to perform to Memeo's "personal satisfaction" and thus her position did not require a high level of "personal accountability." *See Ramirez v. San Mateo County Dist. Attorney's Office*, 639 F.2d 509, 513 (9th Cir. 1981). Moreover, a juvenile detention officer does not represent the district judge in the eyes of the public. *See Clark v. Tarrant County, Tex.*, 798 F.2d 736, 743 (5th Cir. 1986). As Turnbull's testimony indicates, Memeo did not exercise close control over Turnbull's position; rather, Watson and Plaster did. A detention officer is relatively low in the chain of command of the Fourth Judicial District Court, as is evident from the number of Turnbull's supervisors. Finally, there is no evidence Turnbull and Memeo worked closely; indeed, the record establishes only one meeting between Memeo and the probation department staff since Memeo's arrival in 2002. These factors weigh heavily against considering Turnbull a member of Memeo's personal staff, and therefore Turnbull is not exempt from Title VII's and ADEA's protections under 42 U.S.C. § 2000e(f) or 29 U.S.C. § 630(f).

### 2.    Sex Discrimination

Memeo and Watson argue Turnbull is unable to establish the "inference of discrimination" necessary to state a prima facie sex discrimination case. *Douglas v. Anderson*, 565 F.2d 528, 533 (9th Cir. 1981).  Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  To recover on a sex discrimination claim under Title VII, the complainant must first establish a prima facie case. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Once a prima facie case has been made, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the employer's conduct.  *Id*.  If the employer supplies a legitimate nondiscriminatory reason, the employee must then show that the stated reason is merely a pretext for discrimination.  *Id*. at 803.

"The requisite degree of proof necessary to establish a *prima facie* case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence."  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 888-89 (9th Cir. 1994) (citations omitted). "The plaintiff need only offer evidence which 'gives rise to an inference of unlawful discrimination.'"  *Id*. (citations omitted).  A plaintiff can establish a prima facie case of a Title VII violation by showing that she (1) was a member of a protected class, (2) performing her job in a satisfactory manner, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly situated individuals outside the protected class.  *See Mondero v. Salt River Project*, 400 F.3d, 1207, 1211 (9th Cir. 2005); *Wallis*, 26 F.3d at 891.

Here, Turnbull's evidence establishes a prima facie case.  First, as a female, Turnbull was a member of a protected class under Title VII.  Second, Turnbull's June 2003 job performance evaluation rated her performance as "standard or above," thus establishing she was performing in a satisfactory manner.  While Watson contends that Turnbull was not performing satisfactorily, Turnbull has provided the "very little" evidence needed to establish satisfactory performance for

11

the purposes of a prima facie showing. *Lyons v. England*, 307 F.3d 1092, 1112-13 (9th Cir. 2002)

Third, Turnbull suffered an adverse employment action in the form of a de facto termination. The parties vigorously dispute whether Turnbull suffered a "constructive discharge," which requires a showing that "working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004). However, constructive discharge is only one type of adverse action. Where (1) the employer imposed a forced choice of resignation or termination, (2) at-will employment limits an employee's ability to challenge her termination, and (3) there was no reasonable alternative to resigning, the employee's subsequent resignation is involuntary. *See Yearous v. Niobrara County Mem'l Hosp. ex rel. Bd. of Trustees*, 128 F.3d 1351, 1358 (10th Cir. 1997) (describing the elements of involuntary resignation). An involuntary resignation is a de facto termination, and a de facto termination may satisfy the prima facie requirement of adverse action. *See Clements v. Barden Miss. Gaming, L.L.C.*, 373 F. Supp. 2d 653, 668 (N.D. Miss. 2004).

In the present case, Turnbull's employer gave Turnbull, an at-will employee, a forced choice of resignation or termination. Turnbull had no reasonable alternative to resigning; indeed, she resigned because she "didn't want the stigma of being fired from a job." (Turnbull Dep. (#5), Ex. A at 66:24-25.) Moreover, Turnbull later attempted to rescind her resignation before the effective date of termination. (*Id*. at 69:11-21.) Under these circumstances, Turnbull has presented enough evidence to show she suffered an adverse employment action.

Fourth, Turnbull alleges she was treated less favorably than males or younger females within her department. "In order to assert a valid Title VII claim for sex discrimination, a plaintiff must make out a prima facie case establishing that the challenged employment action was either intentionally discriminatory or that it had a discriminatory effect on the basis of gender." *Jespersen v. Harrah's Operating Co., Inc.*, 444 F.3d 1104, 1108 (9th Cir. 2006). Turnbull alleges intentional discrimination. (Turnbull's Opp'n to Memeo's Mot. for Summ. J. (#11), at 11.) Turnbull's

testimony establishes that both she and another female employee suffered adverse employment

actions, and their positions were subsequently filled by males.  (Turnbull Dep. (#5), Ex. A at 53:21-

54:5.)  This testimony satisfies the minimal prima facie requirement of conduct that could give rise

to the inference of discriminatory intent.

Because Turnbull has established a prima facie case, the burden shifts to Memeo and

Watson to articulate a legitimate nondiscriminatory reason for the their conduct.  Memeo argues for

the first time in his reply that "ample evidence of legitimate reasons has been presented," (Memeo's

Rep. to Turnbull's Opp'n to Memeo's Mot. For Summ. J. (#17), at 5).  Ordinarily, this court will

not address issues raised for the first time in reply briefs.  *Thompson v. Comm'r*, 631 F.2d 642, 649

(9th Cir. 1980).  However, courts can address an argument raised by the defendant for the first time

in the reply brief if the plaintiff raised the issue in the responding brief.  *United States v. Bohn*, 956

F.2d 208, 209 (9th Cir. 1992).  In her response to Memeo, Turnbull claims, "There is scant

evidence of incompetence, nonfeasance or misfeasance on [Turnbull's] part."  (Turnbull's Opp'n to

Memeo's Mot. for Summ. J. (#11), at 11.)  Since Turnbull addressed the lack of evidence of

legitimate, nondiscriminatory reasons to terminate her, the court will consider Memeo's reply.

The evidence establishes nondiscriminatory grounds for Turnbull's termination.  Pat

Plaster, the terminating supervisor, told Turnbull at the time of termination that her "job

performance and supervisory skills had become less than adequate."  (Turnbull Dep. (#5), Ex. A at

60:3-4.)  Other incidents, the most recent of which occurred in May 2003, suggest that Turnbull

failed to follow departmental procedures relating to the handling of juveniles.  (*Id*. at 71-74.)  For

instance, in discussing an incident involving a confrontation with a juvenile, Turnbull admitted, "It

would have been more appropriate in another area."  (*Id*. at 74:7-8.)  These grounds provide a

legitimate reason for Turnbull's termination sufficient to shift the burden back to Turnbull.

As Memeo and Watson have articulated a legitimate reason for Turnbull's termination,

Turnbull must show her employers's grounds for termination are a pretext for discrimination.

13

*McDonnell Douglas Corp.*, 411 U.S. at 803; *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (holding that once a legitimate nondiscriminatory reason has been presented, the presumption of discrimination is gone and the plaintiff may defeat summary judgment by satisfying the requirements of Rule 56(c) of Federal Rules of Civil Procedure). "However, while the burden of persuasion remains at all times with the plaintiff, this final burden shift does not necessarily impose a new burden of production." *Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002).   If the factfinder believes that the employer's proffered nondiscriminatory reasons lack credibility, the factfinder may infer "the ultimate fact of intentional discrimination" without additional proof once the plaintiff has made out her prima facie case. *Id*.  The plaintiff can demonstrate pretext either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220-22 (9th Cir.1998).

Here, Turnbull has presented evidence that Memeo's and Watson's treatment of her was motivated by gender.  Making all reasonable inferences in Turnbull's favor, as the court must at summary judgment, the "standard or above" job performance review on June 4th is inconsistent with Memeo and Watson's proffered reason for the June 12th termination, Turnbull's "less than adequate" job performance.  Though Plaster cites two incidents involving juveniles that motivated the termination, both these incidents occurred before the job performance review.  (Letter of Pat Plaster (#6), Ex. B.)  Since "circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable" can establish pretext, *Godwin*, 150 F.3d at 1222, Turnbull's performance review creates a triable issue of sex discrimination.

### 3.    Age Discrimination

The burdens of proof and persuasion are the same under Title VII and the ADEA.  *Wallis*,

14

26 F.3d at 888-89 (citing *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1420 (9th Cir. 1990)).  "The requisite degree of proof necessary to establish a *prima facie* case for . . . ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence."  *Wallis*, 26 F.3d at 889 (citations omitted).  "The plaintiff need only offer evidence which 'gives rise to an inference of unlawful discrimination."  *Id*. (citations omitted).  A plaintiff establishes a prima facie case of an ADEA violation by showing that (1) she was at least forty years old; (2) she was terminated; (3) she was meeting her employer's reasonable expectations at the time she was terminated; and (4) she was replaced by someone substantially younger with equal or inferior qualifications or discharged under circumstances "otherwise giving rise to an inference of age discrimination."  *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

Here, Turnbull again has not provided the "very little" evidence needed to establish a prima facie case of age discrimination.  *Lyons,* 307 F.3d at 1112-13.  The parties do not dispute Turnbull was over forty years old at the time of termination.  Further, Turnbull satisfies (2), and (3) of the prima facie case, as shown by the evidence submitted in support of her sex discrimination claim.  However, her male replacement was actually older than she.  (Turnbull Dep. (#5), Ex. A at 83:18-25.)  While replacement by an older employee will not necessarily foreclose prima facie proof in workforce reduction cases, *Diaz*, 521 F.3d at 1208, n.2, there is no such exception for cases like Turnbull's, *see O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (explaining that an ADEA plaintiff's replacement must be substantially younger).  Therefore, Turnbull has not established a prima facie case of age discrimination, and partial summary judgment on this claim is appropriate.

### E.  First Amendment Retaliation Under 42 U.S.C. § 1983

Turnbull also alleges that Watson violated her First Amendment rights by retaliating against her for reporting Watson's use of force against a juvenile.  In order to state a claim against a government employer for violation of the First Amendment, "an employee must show (1) that he or

15

she engaged in protected speech; (2) that the employer took 'adverse employment action'; and (3) that his or her speech was a 'substantial or motivating' factor in for the adverse employment action." *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). Speech is protected if it addresses "a matter of legitimate public concern," such as information that enables "members of society to make informed decisions about the operation of their government." *Id.*

In the present case, Turnbull's speech addressed a matter of public concern. Turnbull filed a report and was interviewed in the course of an investigation into Watson's use of excessive force. (Turnbull Dep. (#5), Ex. A at 91.) Indeed, the Probation Department's internal regulations required reports to be filed whenever a physical altercation occurred between a staff member and a juvenile. (*Id*. at 91:4-7.) The use of excessive force by a juvenile detention officer is a matter of legitimate public concern because the detention officers are employed by the public, and the report of force enables the public, through representatives, to make informed decisions about the officers' continued employment.

Furthermore, Turnbull's de facto termination suffices as an adverse employment action; thus, she has presented sufficient evidence in support of the second prong of a retaliation claim.

Finally, Turnbull has presented evidence that her termination resulted from Watson's alleged retaliation. A plaintiff may show that retaliation was a substantial or motivating factor in an adverse employment action in three ways. First, a plaintiff can show that the proximity in time between the protected action and the allegedly retaliatory employment decision gives rise to an inference that the plaintiff was terminated in retaliation for her speech. *Schwartzman v. Valenzuela*, 846 F.2d 1209, 1212 (9th Cir. 1988). Second, a plaintiff can introduce evidence that "[her] employer expressed opposition to [her] speech, either to [her] or to others." *Coszalter*, 320 F.3d at 977 (internal quotation marks omitted). Third, "the plaintiff can introduce evidence that [her] employer's proffered explanations for the adverse employment action were false and pre-textual." *Id*.

1    Both the proximity in time between Turnbull's report and her de facto termination as well

2    as the inconsistent performance evaluations give rise to an inference that Turnbull was terminated

3    in retaliation for her report.  First, Turnbull's report occurred in April 2003, and two months later

4    her employer terminated her.  Two months is "easily within a time range that can support an

5    inference of retaliation." *Id*. at 1213 (discussing a time range of three to eight months).  Second,

6    while Watson called Turnbull into his office not long after the report and insisted that Tunbull was

7    "too valuable an employee" and "cannot quit" (Turnbull Dep. (#5), Ex. A at 93.), Turnbull testified

8    that she "had no idea where that was coming from."  (*Id*.)  Moreover, the insistence that Turnbull

9    was "too valuable an employee" contrasts sharply with the proffered reason for termination,

10   Turnbull's inadequate performance.  Further, one basis for termination cited by Plaster, an incident

11   involving a juvenile, occurred just days before Watson told Turnbull she was too valuable to lose.

12   In conjunction with the inconsistent performance review, Turnbull has presented sufficient

13   evidence that her employer's reasons for terminating her were false and pretextual.  Therefore,

14   Turnbull has created a triable issue on her retaliation claim.

15   **F.  Custom and Policy**

16   Turnbull alleges that the Fourth Judicial District Court "has a custom and policy . . . of

17   failing . . . to prevent violations of civil rights of persons being terminated" both by refusing to curb

18   alleged discriminatory conduct and by depriving terminated employees of due process.  (Compl.

19   (#2)[3] at ¶¶ 42, 43.)  Memeo and Watson have not pointed to any reason why summary judgment on

20   this claim is appropriate other than the alleged insufficiency of Turnbull's retaliation claim.  Since

21   the retaliation claim survives summary judgment, however, summary judgment on the custom and

22   policy claim is not warranted.

23   Turnbull is admonished, though, that a custom and policy claim requires more than the bare

24

25   [3]Docket number refers to case 3:04-CV-00683-LRH-VPC, Turnbull's case number before her civil
     action was severed.

26

allegations stated in her complaint.[4]  In particular, Turnbull must establish either (1) the employee committed the alleged constitutional violations pursuant to a formal governmental policy or longstanding custom constituting the standard operating procedure of the local governmental entity, (2) the constitutional tortfeasor was an official with "final policy-making authority" and the challenged action is an act of official governmental policy, or (3) the final policy-maker ratified a subordinate's unconstitutional decision or action and the basis for it.  *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).  Turnbull has yet to establish any of these grounds for relief on her custom and policy claim.

**IV.  Conclusion**

Turnbull has presented sufficient evidence to raise a genuine issue of material fact on her claims of sex discrimination and First Amendment retaliation.  However, partial summary judgment in favor of Memeo and Watson is warranted on Turnbull's state law claims, her Due Process claim, and her age discrimination claim.

IT IS THEREFORE ORDERED that Memeo's motion for summary judgment (#5) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Watson's motion for summary judgment (#6) is GRANTED in part and DENIED in part.

///

///

///

///

///

///

---

[4]See this court's September 2005 order (3:04-00683-LRH-VPC #25, at 4-5), assuming municipal liability since both defendants failed to show that judgments against them in their official capacities would be paid by the state.

1    **IT IS FURTHER ORDERED** that the parties shall lodge their proposed joint pretrial

2  order within thirty (30) days from entry of this Order.  <u>See</u> Local Rules 16-4 and 26-1 (e)(5).

3    IT IS SO ORDERED.

4    DATED this 30th day of June 2008.

5

6    _____

7    LARRY R. HICKS
     UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26